IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN GRAY, *Plaintiff,* | : : : |
| v. | : CIVIL NO. 23-0263 |
| MAIN LINE HOSPITALS, INC., *Defendant.* | : : : : |

## MEMORANDUM

**Scott, J.**                                                                                                                                  **February 15, 2024**

      Plaintiff Dawn Gray commenced this action against her former employer, Defendant Main Line Hospitals, Inc., alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Specifically, Plaintiff alleges: (a) that Defendant failed to accommodate Plaintiff's request for a religious exemption to the COVID-19 vaccine mandate in violation of Title VII (Count I) and the PHRA (Count III); (b) that Defendant subjected Plaintiff to disparate treatment based on her religion in violation of Title VII (Count II) and the PHRA (Count IV); and (c) that Defendant discriminated against Plaintiff based on her age in violation of the PHRA (Count V). Presently pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 21), which has been fully briefed. ECF Nos. 22, 23. For the reasons set forth below, Defendant's Motion (ECF No. 21) will be granted in part and denied in part. An appropriate Order will follow.

1

## I. BACKGROUND[1]

On July 15, 2021, Main Line Health issued a COVID-19 Vaccination Policy requiring employees to be vaccinated against COVID-19. ECF No. 21-2 ¶ 41; ECF No. 22-2 ¶ 41. The COVID-19 Vaccination Policy provided that employees could apply for medical and/or religious exemptions and provided procedures and forms for doing so. ECF No. 21-2 ¶ 44; ECF No. 22-2 ¶ 44. Employees had until September 15, 2021 to request a medical or religious exemption to the COVID-19 Vaccination Policy. ECF No. 21-2 ¶ 49; ECF No. 22-2 ¶ 49. Pursuant to the Policy, employees who did not receive the COVID-19 vaccine or an approved exemption were subject to termination. ECF No. 21-2 ¶ 47; ECF No. 22-2 ¶ 47.

Plaintiff was a nurse in the Emergency Department at Paoli Hospital, which is part of the Main Line Health System. ECF No. 21-2 ¶ 1; ECF No. 22-2 ¶ 1. On September 10, 2021, Plaintiff submitted a religious exemption form and included her Pastor's statement dated August 12, 2021. ECF No. 21-2 ¶ 53; ECF No. 22-2 ¶ 53. In detailing her objection to the COVID-19 vaccine, Plaintiff indicated in her religious exemption form, *inter alia*, that she is "not comfortable having genetic components that [her] body did not create injected into [her] body" because she believes it would alter her image which God intended for her. ECF No. 22-1 ¶ 56; ECF No. 22-2 ¶ 56. As an example of this belief manifesting, Plaintiff detailed in her request her refusal to pursue certain conception options because of her belief that if she and her husband "were to have children [] God would allow it to happen through natural means." *Id.* Plaintiff's religious exemption request form also indicated that she never sought a religious exemption from the annual flu vaccine mandate, and she is not opposed to all vaccines, just those having genetic components that her body did not

---

[1] The facts set forth in this Section are derived from the undisputed evidence of record submitted by the parties and the disputed evidence of record viewed in the light most favorable to Plaintiff.

create. ECF No. 21-2 ¶¶ 62, 66; ECF No. 22-2 ¶¶ 62, 66. Her Pastor's statement included in her request stated, "[c]onfident that God has determined the precise physiological makeup of each individual person, [Plaintiff] believes that the functions of the present COVID-19 'vaccines' would alter the specific genetic makeup of her body," and that such decision is "completely consistent with decisions [Plaintiff] made decades ago regarding her refusal to recommended medical procedures." ECF No. 21-2 ¶ 76; ECF No. 22-2 ¶ 76. Additionally, he stated he is "satisfied that her objection to a COVID-19 inoculation rests solidly upon sincerely held faith convictions." *Id.*

Upon review of Plaintiff's request, the Main Line Health Religious Exemption Committee concluded that Plaintiff failed to articulate a sincerely held religious belief that precluded COVID vaccination. ECF No. 21-2 ¶ 107; ECF No. 22-2 ¶ 107. Specifically, the Committee determined that COVID-19 vaccines did not alter one's genetic makeup, and regardless of the accuracy of Plaintiff's statements about genetics, her exemption request was focused on science, rather than explaining her religious objection to the vaccine. ECF No. 21-2 ¶¶ 97–105; ECF No. 22-2 ¶¶ 97–105. After the Committee denied Plaintiff's exemption request, Plaintiff submitted an appeal, in which she added, that the COVID vaccines were tested on fetal cell lines which violates her religious opposition to abortion. ECF No. 21-2 ¶¶ 117–121; ECF No. 22-2 ¶¶ 117–121. The Appeals Committee denied Plaintiff's appeal because Plaintiff's request focused on genetic components, and she did not correlate her religious beliefs with her objection to the COVID vaccine. ECF No. 22-1 ¶¶ 137–141; ECF No. 22-2 ¶¶ 137–141.

Because Plaintiff exhausted her avenues for an exemption and declined to get the COVID vaccine, she was terminated in accordance with the COVID-19 Vaccination Policy on November 1, 2021. ECF No. 21-2 ¶¶ 143–146; ECF No. 22-2 ¶¶ 143–146. Thereafter, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC"). ECF No. 1 ¶¶ 7–8. On November 3, 2022, the EEOC issued a Notice of the Right to Sue Letter. *Id.* ¶ 11. This suit followed.

## II. PROCEDURAL HISTORY

On January 23, 2023, Plaintiff filed this suit alleging the following Counts: (1) religious discrimination in violation of Title VII—failure to accommodate (Count I); (2) religious discrimination in violation of Title VII—disparate treatment (Count II); (3) religious discrimination in contravention to the PHRA—failure to accommodate (Count III); (4) religious discrimination in contravention of the PHRA—disparate treatment (Count IV); and (5) age discrimination in contravention of the PHRA—disparate treatment (Count V). ECF No. 1. The case proceeded through discovery. Currently pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 21), to which Plaintiff filed an Opposition (ECF No. 22), and Defendant filed a Reply (ECF No. 23). Accordingly, this matter is ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144,

151 (3d Cir. 2017) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'[O]nly evidence sufficient to convince a reasonable factfinder' merits consideration at this stage." *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson*, 477 U.S. at 255.

## IV. DISCUSSION

Defendant's Motion for Summary Judgment argues that Plaintiff has failed to establish a prima facie case to maintain any of her claims. *See generally* ECF No. 21. For the reasons set forth below, the Defendant's Motion for Summary Judgment will be denied as to Plaintiff's religious accommodation claims (Counts I and III) and granted as to Plaintiff's disparate treatment and age discrimination claims (Counts II, IV, and V).

Title VII and the PHRA prohibit religious discrimination in employment.[2] Under these laws, employees may assert different theories of religious discrimination: failure to accommodate and disparate treatment. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001). Plaintiff asserts both, in addition to an age discrimination claim under the PHRA. The Court will address theory of liability in turn.

### A. Failure to Accommodate (Title VII and the PHRA)

To establish a prima facie case of failure to accommodate, "the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (internal quotation marks and citation omitted). If the plaintiff makes such a showing, "[t]he burden [then] shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business." *Id.* (citation omitted)

Defendant challenges only the first element of Plaintiff's prima facie case arguing that Plaintiff cannot meet her burden of demonstrating that her objections to the vaccine were religious. ECF No. 21-1 at 10–18. Defendant also argues, however, that even if Plaintiff has established a prima facie case, it is still entitled to summary judgment on Plaintiff's failure to accommodate claim because granting Plaintiff a religious exemption would have imposed an undue hardship on it. *Id.* at 10, 18–25.

---

[2] "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). Here, the parties have not identified any specific difference in language that would implicate Plaintiff's claims.

### 1. *Sincerely Held Religious Belief*

"Whether a belief is sincerely held is a question of fact." *Shields v. Main Line Hosps., Inc.*, No. 2:22-CV-03307, 2023 WL 7129953, at *3 (E.D. Pa. Oct. 27, 2023) (citing *United States v. Seeger*, 380 U.S. 163 (1965)). And whether a belief is religious "present(s) a most delicate question." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981) (citation omitted). "While 'no court should inquire into the validity or plausibility of' a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (quoting *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). "'The notion that all of life's activities can be cloaked with religious significance' cannot transform an otherwise secular idea into a religious belief." *Maher v. Bayhealth Med. Ctr., Inc.*, 22-cv-1551, 2024 WL 406494, at *2 (D. Del. Feb. 2, 2024) (quoting *Africa*, 662 F.2d at 1035). "[T]he very concept of ordered liberty precludes allowing [a plaintiff], . . . a blanket privilege to make [their] own standards on matters of conduct in which society as a whole has important interests." *Africa*, 662 F.2d at 1031 (internal quotation marks and citation omitted). Thus, courts are required to differentiate "between those whose views [are] religious in nature and those whose views [are] 'essentially political, sociological, or philosophical.'" *Fallon*, 877 F.3d at 490 (citation omitted).

In determining whether an employee's beliefs are religious, the Third Circuit has routinely considered whether the beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (quoting *Fallon*, 877 F.3d at 491) (internal quotation marks omitted). As "to the

7

first factor, beliefs address 'fundamental' and 'ultimate' questions when they 'consider and attempt to come to terms with what could best be described as ultimate questions—questions having to do with, among other things, life and death, right and wrong, good and evil.'" *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023) (quoting *Africa*, 662 F.2d at 1033). As to the second factor, for beliefs to be "comprehensive in nature," they "must consist of something more than a number of isolated, unconnected ideas." *Africa*, 662 F.2d 1035. Thus, it cannot be "generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* (citation omitted). As to the final factor, "'in ascertaining whether a set of ideas should be classified as a religion,' courts look to 'any formal, external, or surface signs that may be analogized to accepted religions' such as 'formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions.'" *Blackwell*, 2023 WL 362392, at *5 (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)).

The Court considers this to be a very close case. However, the Court finds that Plaintiff has shown a dispute as to material fact as to whether her belief is religious sufficient to withstand summary judgment. As to the first *Africa* factor, Plaintiff's request for a religious exemption indicates that "I believe life begins at conception and ends at natural death" and details her refusal to pursue certain fertility options because of this belief. This belief thus seems to touch on "life and death" and "right and wrong," thereby addressing fundamental questions concerning deep and imponderable matters. *See Africa*, 662 F.2d at 1033. As to the second *Africa* factor, Plaintiff is a Christian who believes that the vaccine would negatively affect her conscience and soul by altering how God created her. She supports this belief by citing Bible scriptures, she interprets as

forbidding the injection of the COVID-19 vaccine. The Court notes that she is a member of Calvary Bible Church and several members of her Church have gotten the COVID-19 vaccine. But "an employee's religious beliefs are protected whether or not [their] pastor agrees with [them]." *Shields*, 2023 WL 7129953, at *5 (internal quotation marks and citation omitted). This issue goes towards the sincerity of Plaintiff's belief. Additionally, as evidenced from Plaintiff's exemption request form, her belief does not seem to be an isolated and unconnected belief. Rather, she has connected the belief to her refusal to pursue certain fertility options. Finally, as to the final *Africa* factor, Plaintiff's example of she and her husband refusing to pursue certain fertility options is an external sign of her belief.

The Court notes that numerous cases within this Circuit have dismissed similar failure to accommodate claims where plaintiffs have put forth beliefs that their "Body is a Temple" or mRNA in vaccines changes God given DNA. *See, e.g., Hand v. Bayhealth Medical Ctr., Inc.*, No. 22-cv-1548, 2024 WL 359245 (D. Del. Jan. 31, 2024) (granting motion to dismiss failure to accommodate claim where plaintiff's religious beliefs that her body is a temple and mRNA changes DNA God created us with prohibited her from receiving the COVID-19 vaccine); *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *1 (E.D. Pa. Apr. 13, 2023) (granting motion to dismiss failure to accommodate claim where plaintiff's beliefs that her "body is a temple of the Holy Spirit" and "God has given [her] liberty to live according to His calling" conflicted with her undergoing COVID-19 testing). Many of these cases have focused on statements made by the plaintiffs that the vaccine would harm the plaintiff's body. *See, e.g., Hand*, 2024 WL 359245, at *4–5. Courts have explained that "[t]he notion that we should not harm our bodies is ubiquitous in religious teachings, but a concern that a treatment may do more harm that good is a medical belief, not a religious one. *Id.* at *4 (citations omitted).

Here, Plaintiff does not *explicitly* state that the vaccine would harm her body, rather she states that the vaccine would alter how God created her. Additionally, Plaintiff states she is "not opposed to vaccines" and in fact, she has received the flu vaccine in the past, but that she is opposed to "genetic components that her body did not create."³ This could be evidence that her belief is specifically against vaccines with "genetic components" that would alter her God given design and not concern with the safety of vaccines. *See Aliano*, 2023 WL 4398493, at *6–7 (denying motion to dismiss as to named plaintiff where plaintiff's "apprehension toward the COVID-19 vaccine arises from his concern that the vaccine will prevent him from being the 'fingerprint of God'— rather than concerns regarding the potential side effects or dangers of the vaccine."). On the other hand, it very well may be that Plaintiff's aversion to the COVID vaccine is a medical or scientific belief that she attempts to "cloak[] with religious significance." *Africa*, 662 F.2d at 1035. Thus, at this point in the litigation, the Court finds that there is a dispute of material fact as to whether Plaintiff's belief is a sincerely held religious belief to preclude summary judgment.

   2. *Undue Hardship*

Given that there is a genuine dispute of material fact if Plaintiff has a sincerely held religious belief, the burden shifts to Defendant to demonstrate that accommodating Plaintiff's sincerely held religious belief would work an undue hardship. The Supreme Court recently clarified in *Groff v. DeJoy*, that an employer demonstrates an undue hardship "when a burden is

---

³ The Court notes that Plaintiff's position on vaccines may have changed since her initial religious accommodation request. For example, in her initial request, she stated "If there is a COVID 19 vaccination that comes out that does not use this process I would investigate and consider accepting it. I have done some initial research into the Novavax Covid 19 vaccine and if it is authorized, I would consider this alternative." ECF No. 21-2 ¶ 66; ECF No. 22-2 ¶ 66. The Novavax vaccine obtained emergency use authorization in the summer of 2022, but Plaintiff has not gotten this vaccine. ECF No. 21-1 ¶¶ 69–71; ECF No. 22-2 ¶¶ 69–71. Additionally, while she has received the flu vaccine in the past, at her deposition Plaintiff questioned whether she will continue to get the flu vaccine. ECF No. 21-1 ¶ 65; ECF No. 22-2 ¶ 65.

substantial in the overall context of [the] employer's business." 600 U.S. 447, 468 (2023) (citation omitted). "[S]howing 'more than a *de minimis* cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII." *Id.* The Court explained that the employer must demonstrate the "accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470 (citation omitted). The Court held that "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.* at 470–71 (citation omitted). Prior to *Groff*, our Court of Appeals recognized that both "economic and non-economic costs can pose an undue hardship upon employers." *GEO Grp., Inc.*, 616 F.3d at 273 (citation omitted). "This principle comports with the Supreme Court's emphasis on a context-specific inquiry of 'undue hardship.'" *Bushra v. Main Line Health, Inc.*, No. 23-cv-1090, 2023 WL 9005584, at * 7 (E.D. Pa. Dec. 28, 2023).

Here, Defendant argues that each vaccine exemption poses a significant risk to the health and safety of employees and patients. Defendant relies on the expert opinion of Dr. Daniel Salmon, who is a Professor of Global Disease Epidemiology and Control, Department of International Health, and serves as the Director of the Institute for Vaccine Safety at Johns Hopkins. ECF No. 21-1 at 22–25. Dr. Salmon's report describes the toll the COVID pandemic took on both health care workers and the ability of health care institutions to care for their communities and how mandatory COVID-19 vaccine policies were a critical protective action for health care institutions to protect patients and staff. *Id.* Dr. Salmon also stated: "a larger number of religious exemptions would result in a greater risk of COVID-19 disease transmission and outbreaks adversely

11

impacting other health care staff, patients, and the capacity of the health care system to operate." *Id.* at 25.

On the other hand, Plaintiff points out that Defendant's COVID-19 vaccination policy provided reasonable accommodations such as testing and reassignment, and additional infection prevention control measures. ECF No. 22-1 at 22. Plaintiff asserts that there is no "evidence to suggest how granting [Plaintiff] the same accommodations, including routine weekly testing, that were offered to other employees who were granted medical or religious exemptions would have created an undue hardship on its business operations." *Id.* Additionally, Plaintiff has come forward with her own experts to respond to Dr. Salmon's opinions concerning undue hardship,[4] who opine, for example, that reassignment of "a healthcare worker to another facility amidst a global pandemic while suffering staffing issues and high patient rates, would surely be preferable to losing an experienced nurse such as Gray." ECF No. 22-1 at 26.

The Court finds that the evidence is such that a reasonable jury could find for either party on the issue of undue hardship. Thus, because genuine issues of material fact exist, summary judgment is inappropriate on Count I and Count III of Plaintiff's Complaint. Accordingly, Defendant's Motion for Summary Judgment will be denied insofar as it requests judgment be entered in its favor on Count I and Count III of Plaintiff's Complaint.

### B. Disparate Treatment (Title VII and the PHRA)

A plaintiff seeking to establish a prima facie case of discrimination under a disparate treatment theory of religious discrimination must show: (1) that she is a member of a protected

---

[4] The Court recognizes that following the conclusion of summary judgment briefing in this case, Defendant filed a Motion to Exclude the expert opinions of Dr. Boutros and Dr. McCullough (ECF No. 26), who both respond to Dr. Salmon's undue hardship arguments. However, the Court declines to consider the arguments made in support of Defendant's Motion to Exclude Plaintiff's Experts at this time.

class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Here, there is no dispute that Plaintiff is Christian, was qualified for her position as a nurse in the Emergency Department, and her termination was an adverse employment action. Thus, the dispute centers on whether the termination occurred under circumstances that could give rise to an inference of intentional discrimination.

Plaintiff's Complaint raises two disparate treatment theories: (1) medical and religious exemptions were treated differently and (2) religious employees were treated differently than non-religious individuals. But as Defendant has noted, there is "no evidence or law to support Plaintiff's disparate treatment claims" on those theories. ECF No. 21-1 at 26–27. In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff does not point to any evidence to support either claim. ECF No. 22-1 at 27–28. Instead, Plaintiff puts forth a new theory, that Defendant denied Plaintiff's exemption request to avoid providing her with an accommodation. *Id.* Plaintiff argues that because Plaintiff would have been paid "pretty well" and Defendant was struggling financially, there is a "factual dispute regarding motivation for the disparate treatment." *Id.* The Court disagrees. Plaintiff does not identify any group that was treated more favorably than Plaintiff—which is the essence of a disparate treatment claim—based on religion. Thus, there is no dispute of material fact as to the disparate treatment claims.

Accordingly, Defendant's Motion for Summary Judgment will be granted as to the disparate treatment claims.

## C. Age Discrimination (the PHRA)

The PHRA age discrimination claims are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Fasold v. Justice*, 409 F.3d 178, 183–84 (3d Cir. 2005). Under this framework, a plaintiff must first establish a prima facie case of age discrimination by a preponderance of evidence by demonstrating that: (1) they are 40 years of age or older; (2) the defendant took an adverse employment action against the plaintiff; (3) plaintiff was qualified for the position at issue; and (4) the plaintiff was replaced by an "employee who was sufficiently younger to support an inference of discriminatory animus." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 385 (E.D. Pa. 2013) (internal quotation marks and citation omitted). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (citation omitted). If the defendant satisfies their burden, the burden shifts back to the plaintiff to show that "the employer's proffered justification for the adverse action is pretextual." *Id.* "The plaintiff may demonstrate that the defendant's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a 'but for' cause of the adverse employment action." *Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citations omitted). "Regardless of the method, the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a 'but for' cause for the adverse employment action." *Id.* (citations omitted).

Plaintiff's age discrimination claim is based on her contention that five staff nurses in the Emergency Department applied for religious exemptions, three of whom were under 40 years old,

and they all received exemptions. *See* ECF No. 21-3, Ex. A, 217:12–219:24 (noting Plaintiff was the only one in the ER that did not get a religious exemption). Plaintiff's Opposition argues that she "has provided in this record sufficient facts that younger individuals, who were likely paid less, were granted religious exemptions, afforded accommodations and were therefore treated more favorably than Gray." ECF No. 22-1 at 31. Assuming arguendo that Plaintiff did establish her prima facie case of age discrimination, there is no evidence of pretext by Defendant or that age was the "but for" cause for Plaintiff's termination. Accordingly, the Court will dismiss Plaintiff's age discrimination claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) will be granted in part and denied in part. It will be denied as to Counts I and III, and granted as to Counts II, IV, and V. An appropriate Order will follow.

BY THE COURT:

_____
HON. KAI N. SCOTT
United States District Court Judge