IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAWN GRAY,

*Plaintiff*

v.                                          Case: 2:23-cv-00263-KNS

MAIN LINE HOSPITALS, INC.,

*Defendant*

## DEFENDANT'S PRETRIAL MEMORANDUM

Plaintiff, Dawn Gray, contends that her former employer, Defendant, Main Line Hospitals, Inc., engaged in religious discrimination by denying her request for an exemption to the Main Line Health (MLH) COVID-19 Vaccination Policy. MLH denied Plaintiff's exemption request because it presented medical/scientific objections to the COVID vaccine rather than religious concerns. Trial is scheduled to begin on April 25, 2024. Defendant, through its undersigned counsel, respectfully submits this Pretrial Memorandum,[1] in accordance with Judge Scott's Policies and Procedures and the February 22, 2024 Jury Trial Notice (ECF 43).

## I.     Factual Overview

Plaintiff, Dawn Gray, was a nurse in the Emergency Department at Paoli Hospital, which is part of the Main Line Health system. Main Line Health and other health care institutions were on the front lines of fighting the COVID pandemic.   When COVID vaccines became available in December 2020, health care workers were in the first priority group.   Although many MLH

---

[1] Defendant filed a Pretrial Memorandum on January 30, 2024 (ECF 32) in advance of the pretrial conference conducted on February 20, 2024. As that submission predated the Court's February 15, 2024 decision on Defendant's Motion for Summary Judgment (ECF 39) which dismissed some of Plaintiff's claims and the Court's decision granting Defendant's Motions *in Limine* on Plaintiff's damage claims (ECF 42), this Memorandum is focused on the issues remaining before the Court.

employees were eager to get vaccinated, others were hesitant.  The Center for Disease Control (CDC) and the general scientific community recommended COVID vaccination for most adults. MLH dispatched ambassadors to educate employees about the safety and efficacy of COVID vaccines, in the hopes of increasing vaccination rates.   But a partisan battle fueled by misinformation about vaccines reverberated through  social media.

In the summer of 2021, the highly contagious Delta variant of COVID was the predominant strain in the United States.  In August 2021, MLH announced a mandatory vaccination policy, requiring medical staff and employees to be vaccinated against COVID. The Policy's explicit purpose was to protect patients, staff, families and the community.  The Policy allowed employees to request exemptions for valid medical conditions or sincerely held religious beliefs that precluded vaccination.  Employees who were not vaccinated and had not been approved for an exemption by November 1, 2021 were terminated.    In September 2021, the Biden-Harris Administration announced that it would require COVID-19 vaccination of staff in all Medicare and Medicaid-certified facilities (which included MLH) and that health care institutions should make efforts to get health care staff vaccinated to make sure they were in compliance when the rule took effect.

On September 10, 2021, Plaintiff submitted a request for a religious exemption from the COVID-19 vaccine in which she discussed the decision she and her husband had made years earlier when trying to conceive a child.  She said that they had tried "low tech" options, but decided against hormones, artificial insemination, or in vitro fertilization.   She said that she was not opposed to all vaccines, just those containing "genetic components."  Ms. Gray's submission included a statement from her Pastor, which asserted that Plaintiff "believes that the functions of the present COVID 19 'vaccines' would alter the specific genetic makeup of her body."

The MLH Religious Exemption Committee, which included chaplains, physicians and Human Resource professionals, reviewed each religious exemption request to determine whether it expressed a sincerely held religious belief that precluded COVID vaccination.  The Religious Exemption Committee determined that Plaintiff's exemption request was focused on science/medical issues and failed to articulate a sincerely held religious belief that precluded COVID vaccination.  After the Religious Exemption Committee denied her request, Plaintiff submitted an appeal, which was denied by the Appeals Committee.  As employees who were not approved for an exemption and declined to receive the COVID vaccine by November 1, 2021 were terminated, Plaintiff was discharged in accordance with the Policy.

As anticipated, on November 5, 2021, the Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS") issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to require facilities to ensure that their covered staff are vaccinated against COVID–19. *Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61555 (Nov. 5, 2021)("CMS Rule").  (The CMS Rule is attached as Exhibit A). The CMS Rule considered the science and research studies that were available at the time on the impact of COVID-19 on health care workers as well as the safety and efficacy of vaccines, and determined, *inter alia*:

1. "COVID–19 has had significant negative health effects—on individuals, communities, and the nation as a whole.  Consequences for individuals who have COVID–19 include morbidity, hospitalization, mortality, and post- COVID conditions (also known as long COVID)." 86 Fed. Reg. at 61556.

2. "As of mid-October 2021, over 44 million COVID–19 cases, 3 million new COVID–19 related hospitalizations, and 720,000 COVID–19 deaths have been reported in the

U.S. Indeed, COVID–19 has overtaken the 1918 influenza pandemic as the deadliest disease in American history." 86 Fed. Reg. at 61556.

3. "[H]ealth care staff who remained unvaccinated may also pose a direct threat to patients, residents, [employees,] … and community safety and population health." 86 Fed. Reg. at 61585.

4. "[A] COVID–19 vaccine mandate … substantially reduce[d] the likelihood that healthcare workers will contract the virus and transmit it to their patients." 86 Fed. Reg. at 61557–61558.

5. "Health care workers also have a special ethical and professional responsibility to protect and prioritize the health and well-being of those they are caring for, as well as not exposing them to threats that can be avoided. This holds true not only for health care professionals, but also for all who provide health care services or choose to work in those settings." *Id.* at 61569.

On January 13, 2022, the United States Supreme Court upheld the CMS rule in *Biden v. Missouri*, 595 U.S. 87, 91, 142 S. Ct. 647 (2022)(Exhibit B). In reaching its decision, the Supreme Court stated:

1. "The Secretary [of Health and Human Services] issued the rule after finding that vaccination of healthcare workers against COVID–19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" 595 U.S. 87, 91–92, 142 S. Ct. 647, 651, *citing* CMS Rule, 86 Fed. Reg. at 61561.

2. "In many facilities, 35% or more of staff remain unvaccinated . . . and those staff, the Secretary explained, pose a serious threat to the health and safety of patients. That determination was based on data showing that the COVID–19 virus can spread rapidly

among healthcare workers and from them to patients, and that such spread is more likely when healthcare workers are unvaccinated." *Id.*, *citing* CMS Rule, 86 Fed. Reg. at 61561, 61558–61561, 61567–61568, 61585–61586.

3. "[The Secretary] also explained that, because Medicare and Medicaid patients are often elderly, disabled, or otherwise in poor health, transmission of COVID–19 to such patients is particularly dangerous." *Id.*, *citing* CMS Rule, 86 Fed. Reg. at 61566, 61609.

4. "In addition to the threat posed by infacility transmission itself, the Secretary also found that 'fear of exposure' to the virus 'from unvaccinated health care staff can lead patients to themselves forgo seeking medically necessary care,' creating a further 'ris[k] to patient health and safety.'" *Id.*, at 61588. He further noted that staffing shortages caused by COVID–19-related exposures or illness has disrupted patient care. *Id.*, *citing* CMS Rule, 86 Fed. Reg.at 61559.

5. [E]nsuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID–19.'" *Id*. 595 U.S. at 93, 142 S. Ct. at 652 (citations omitted).

II.   **Parties' Claims**

Ms. Gray alleges that MLH discriminated against her based on her religion in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §2000e et seq., and the Pennsylvania

Human Relations Act ("PHRA"), 43 P.S. §§951 *et seq.*[2]  In *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 135 S.Ct. 2028 (2015), the Supreme Court held that Title VII "prohibits two categories of employment practices:" (1) "disparate treatment" or "intentional discrimination" proscribed by 42 U.S.C. § 2000e-2(a)(1) and (2)  "disparate impact" proscribed by 42 U.S.C. § 2000e-2(a)(2).  575 U.S. at 771.

In this case, Plaintiff is asserting an "intentional discrimination," rather than a "disparate treatment" claim, contending that MLH failed to accommodate her requests for a religious accommodation.  To succeed on her failure to accommodate claim, Plaintiff bears the burden of demonstrating that (1) she holds a sincere religious belief that conflicted with a job requirement; (2) she informed MLH of the conflict; and (3) she suffered an adverse employment action for failing to comply with the conflicting requirement.  *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 490 (3d Cir. 2017).  In cases involving objections to receiving vaccines, "it is not sufficient merely to hold a 'sincere opposition to a vaccination;' rather, the individual must show that the 'opposition to vaccination is a religious belief.'" *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (*quoting Fallon v. Mercy Catholic Med. Ctr.*, *supra*, 877 F.3d at 490.  Defendant contends that Plaintiff's exemption request failed to articulate religious objections to the COVID vaccine and therefore was not protected by Title VII.

Even if Plaintiff could establish that her objection to COVID vaccination was religious, Title VII does not provide every employee requesting a religious accommodation with an absolute right to work unvaccinated.  Rather, Title VII requires covered employers to accommodate their employees' sincerely held religious beliefs, ***unless doing so would impose "an undue hardship***

---

[2] Plaintiff's claims under Title VII and the PHRA are coextensive and are thus considered under the same framework. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006); *Pa. State Univ. v. Pa. Hum. Rels. Comm'n*, 95 Pa.Cmwlth. 388, 505 A.2d 1053 (Pa. 1986).

*on the conduct of the employer's business."* 42 U.S.C. §2000e(j)(emphasis added).  In *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S. Ct. 2279, 2294 (2023), the Supreme Court held that a religious accommodation presents an "undue hardship" when the "accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*.   The Third Circuit has recognized that both "economic and non-economic costs can impose an undue hardship on employers." *E.E.O.C. v. Geo Group, Inc*., 616 F.3d 265, 273 (3d Cir. 2010)("[a] religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship.")

Defendant submits that allowing unvaccinated healthcare workers to provide direct patient care imposed an undue burden on MLH's ability to protect patients, staff and families.  This Court recently addressed undue hardship in the specific context at issue in the case at bar: whether it was an "undue hardship" for a hospital to permit a health care worker who was not vaccinated against COVID-19 provide direct patient care in an emergency room.   In *Bushra v. Main Line Health, Inc*., No. CV 23-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023), Judge Bartle determined that Main Line Health "established that it would suffer undue hardship, as defined in *Groff*, if it were required to accommodate any sincerely-held religious belief of Dr. Bushra [an emergency room physician.]" According to Judge Bartle:

> It cannot be disputed that without the vaccine, Dr. Bushra was at great risk of contracting and transmitting the disease because he had frequent and direct contact with patients and staff as a doctor in the emergency room. Unvaccinated, Dr. Bushra risked infecting and even causing the death not only of his colleagues and MLH staff but also of vulnerable patients. The ability of MLH to continue its mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated Dr. Bushra in its midst. In sum, there can be no doubt that MLH would have incurred undue hardship in the form of substantial social, if not economic, costs if it had been required to accommodate Dr. Bushra's religious beliefs.

*Id*.,  2023 WL 9005584, at *8.

### III.    Request for the Court to take Judicial Notice of facts relating to Undue Hardship

As set forth in the joint proposed jury instructions submitted to the Court on April 5, 2024, Defendant asks that the Court take judicial notice of the following facts:

1.    In the fall of 2021, "COVID-19 [was] a highly contagious, dangerous and—especially for Medicare and Medicaid patients—deadly disease." *Biden v. Missouri*, 142 S.Ct. 647, 652, 595 U.S. 87, 93 (U.S. 2022).

2.    "[A] COVID–19 vaccine mandate … substantially reduce[d] the likelihood that healthcare workers will contract the virus and transmit it to their patients." *Id*. citing CMS Rule, 86 Fed. Reg. 61557–61558.

3.    "[H]ealth care staff who remained unvaccinated may also pose a direct threat to patients, residents, [employees,] … and community safety and population health." CMS Rule, 86 Fed. Reg. 61555, 61585.

4.    "Health care workers also have a special ethical and professional responsibility to protect and prioritize the health and well-being of those they are caring for, as well as not exposing them to threats that can be avoided. This holds true not only for health care professionals, but also for all who provide health care services or choose to work in those settings." CMS Rule, 86 Fed. Reg at 61569.

5.    A health care "provider[] tak[ing] steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the 'very opposite of efficient and effective administration for a [health care] facility that is supposed to make people well to make them sick with COVID–19.'" *Biden v. Missouri, supra*, 595 U.S. 87, 93, 142 S. Ct. 647, 652 (citations omitted).

Requests for judicial notice are governed by Federal Rule of Evidence 201. Under Rule 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known throughout the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b)*. Moreover, if a party requests judicial notice and "the court is supplied with the necessary information," the court "***must*** take judicial notice." *Fed. R. Evid. 201(c)(emphasis added)*. Defendant requests that the Court take judicial notice of these facts under Rule 201(c) as they are accurately and readily determined from sources whose accuracy cannot reasonably be questioned and Defendant has provided the Court with the necessary information to take notice with its citation to federal regulations and the Supreme Court's decision in *Biden v. Missouri, supra*. *Fed. R. Evid. 201(c)(2)* ("The court:…(2) must take judicial notice if a party requests it and the court is supplied with the necessary information"). *See also Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 743 fn 4 (1976) (taking notice of federal regulations); *Holst v. Countryside Enter. Inc.*, 14 F.3d 1319, 1322 n.4 (8th Cir. 1994) ("Ordinarily, codes, regulations, and statutes are, if relevant, established through judicial notice.") Defendant further asks the Court to instruct the jury to accept the noticed fact as conclusive pursuant to Rule 201(f). *Fed. R. Evid. 201(f)* ("In a civil case, the court ***must*** instruct the jury to accept the noticed fact as conclusive") (emphasis added).

Judicial notice will help avoid unnecessary and cumulative testimony on these issues which would otherwise give rise to an inefficient and distracting trial about the impact of the COVID pandemic and need for vaccination of health care professionals (both of which are issues that the Plaintiff has questioned). Given the unquestionable federal authority and regulations cited,

Defendant should not have to justify the necessity of the vaccine mandate during the pandemic at trial.

**IV.**     **Fact Witnesses**

     A.  Plaintiff's witnesses

Plaintiff's January 30, 2024 Pretrial Memorandum identifies three witnesses (Andrea Gazzillo, Kerry Downes and Julie Grimm) whom Plaintiff contends are "expected to testify about receiving a religious exemption from the Defendant's Covid-19 Vaccination policy and the accommodations she received."  (ECF 27 at p. 18).  As set forth in Defendant's Motion *in Limine* to preclude Plaintiff from calling witnesses not identified or on subjects not disclosed during pretrial discovery (ECF 45), Defendant objects to Plaintiff calling either Andrea Gazzillo or Kerry Downes as a witness during trial because Plaintiff did not identify those individuals as potential witnesses during pretrial discovery.  Nor did Plaintiff conduct any discovery on the issue of the religious exemption requests allegedly submitted by  these individuals or the accommodations provided.

Plaintiff did identify Julie Grimm as a potential witness in response to Defendant's Interrogatories, which asked Plaintiff to "[i]dentify all individuals who you know or believe have knowledge of any of the facts alleged in the Complaint or your claims and with respect to each person identified describe in detail the factual knowledge that each person has." Plaintiff did not, however, respond to Defendant's request to "describe in detail the factual knowledge" that Ms. Grimm has.  During Plaintiff's deposition, defense counsel asked Plaintiff to identify the information about which Julie Grimm has knowledge.  Plaintiff responded that she and Ms. Grimm were close friends with whom she worked and prayed, who has knowledge about Plaintiff's religious beliefs, fertility struggles, opposition to Plan B, termination and current employment.

Based on Plaintiff's disclosures and the above-referenced testimony, Defendant has no objection to Ms. Grimm testifying (as long as such testimony is admissible under the Federal Rules of Evidence) about those subjects which Plaintiff identified.  But Defendant objects strenuously to Ms. Grimm testifying "about receiving a religious exemption from the Defendant's Covid-19 Vaccination policy and the accommodations she received"  as she was never identified as a potential witness on those subjects.  If a party fails to disclose evidence or a witness as required by Rule 26, then under Federal Rule of Civil Procedure 37, "the party is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It is not harmless because Plaintiff's failure to identify Ms. Grimm for this purpose (or Ms. Gazzillo or Ms. Downes for any relevant purpose) until after the discovery deadline and on the eve of trial precluded Defendant the opportunity to engage in discovery and depositions relative to the proposed testimony.  The decision to exclude evidence is at the Court's discretion. *Nicholas v. Pa. State. Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

B.  Defense witnesses

Defendant will provide the Court with its witness list on April 15, 2024 in accordance with the Jury Trial Notice (ECF 43), but at this juncture, defense witnesses include:

| Name/Title | Nature of Expected Testimony |
|---|---|
| **Greg Papa**<br>VP Human Resources MLH<br>Member of Religious Exemption Committee | Mr. Papa will testify as to the development of the COVID Vaccination Policy, operations of the Religious Exemption Committee and the decision to deny Plaintiff's exemption request. |
| **Reverend Casey Bien-Aime**<br>Endowed Chair of Pastoral Care, Lankenau<br>Member of Religious Exemption Committee | Reverend Bien-Aime will testify as to the operations of the Religious Exemption Committee and the decision to deny Plaintiff's exemption request. |
| **Jane Marshall**<br>Human Resources Director,<br>Bryn Mawr Hospital<br>Member of Religious Exemption Committee | Jane Marshall will testify as to the operations of the Religious Exemption Committee and the decision to deny Plaintiff's exemption request. |

| | |
|---|---|
| **Dr. Jennifer Burke**<br>Palliative Care physician, Riddle Hospital<br>Member of Religious Exemption Committee | Dr. Burke will testify as to the operations of the Religious Exemption Committee and the decision to deny Plaintiff's exemption request |
| **Dr. Jonathan Stallkamp**<br>Chief Medical Officer for MLH<br>Member of Appeals Committee | Dr. Stallkamp will testify as to the challenges in protecting patients and staff during the pandemic, Main Line Health's motivations for adopting its Vaccine Policy, the procedures for exemption requests, the Appeals Committee's decision to deny Plaintiff's appeal and the undue hardship of allowing health care workers with direct patient contact to work unvaccinated. |
| **Pam Teufel**<br>Senior VP Human Resources MLH<br>Member of Appeals Committee | Ms. Teufel will testify about the Appeals Committee procedures and the decision to deny Plaintiff's appeal. |
| **Dr. Barbara Wadsworth**<br>Chief Operating Officer MLH<br>Member of Appeals Committee | Dr. Wadsworth will testify about the Appeals Committee procedures, the decision to deny Plaintiff's appeal, and her knowledge of Plaintiff and her job functions. |
| **Dr. Brett Gilbert**<br>Infections Disease Physician | Dr. Gilbert will testify as to the challenges in protecting patients and staff during the pandemic and Main Line Health's motivations for adopting its Vaccine Policy and the undue hardship of allowing health care workers with direct patient contact to work unvaccinated. |
| **Dr. Daniel Salmon**<br>Director of the Institute for Vaccine Safety and a Professor of Global Disease Epidemiology and Control at Johns Hopkins University. | Dr. Salmon is Defendants' expert on the issue of undue hardship.   He will testify at to the research about COVID and vaccines in September 2021, the safety and efficacy of the COVID vaccines, the cell lines used in testing COVID vaccines and other medications, the research on natural immunity as of September 2021, vaccine hesitancy and the reasons for vaccine mandates. |
| **Dr. Eric Feigl-Ding** | In the event that the Court permits Plaintiff's Expert, Dr. Peter McCullough, to testify on the issue of the composition of the COVID vaccines, Dr. Feigl-Ding will testify as a rebuttal witness |

Defendant reserves the right to call additional witnesses to refute any claims presented by Plaintiff.

V.    **Expert Witnesses**

Defendant's expert witnesses include the following individuals.

| Name/Title | Expert Report |
|---|---|
| **Dr. Daniel Salmon** Director of the Institute for Vaccine Safety and Professor of Global Disease Epidemiology and Control at Johns Hopkins University. | Dr. Salmon's Expert Report and  CV are attached as Exhibit C. |
| **Dr. Eric Feigl-Ding** Epidemiologist and health economist | Dr. Eric Feigl-Ding's Expert Report and CV are attached as Exhibit D. |
| **Dr. Jonathan Stallkamp** Chief Medical Officer MLH | Dr. Stallkamp/s disclosures pursuant to Rule 26(a)(2)(c) are attached as Exhibit E. |
| **Dr. Brett Gilbert** Infections Disease Physician | Dr. Gilbert's disclosures pursuant to Rule 26(a)(2)(c) are attached as Exhibit F. |

VI.    **Motions in Limine**

Two of Defendant's motions are pending before the Court:

1.  Defendant's Daubert Motion to Exclude Plaintiff's Experts' Reports and Opinions (ECF 26); and

2.  Defendant's Motion to Exclude the Trial Testimony of Witnesses/Testimony not Disclosed during Discovery (ECF 45).

VII.    **Trial Exhibits**

In accordance with the Court's Jury Trial Notice (ECF 43), the parties will exchange their pre-numbered trial exhibits on April 11, 2024 and will submit to the Court their list of trial exhibits to the Court by 5:00 p.m. on April 15, 2024.

VIII.    **Proposed Voir Dire**

The parties are in the process of collaborating on proposed voir dire, which will be submitted to the Court on April 15, 2024, in accordance with the Court's Jury Trial Notice (ECF 43).

## IX.    <u>Proposed Jury Instructions</u>

The parties submitted joint proposed jury instructions in Word format to the Court on April

5, 2024, which highlights the parties' agreements and disagreements.

Respectfully submitted,

<u>*/s/ Caren Litvin, Esq.*</u>
Caren Litvin, Esq.
(Pa. Atty I.D. No. 41796)
150 N. Radnor Chester Road, Suite F-200
Radnor, PA  19087
CL@litvinlawoffice.com
(610) 977-2049 (office)
*Counsel for Defendants*

Brendan Hennessy
(Pa. Attorney I.D. No. 91831)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
bhennessy@hennessylawfirm.com
(484) 875-3111 (office)
*Of Counsel to Litvin Law Office*
*for Defendants*

Dated:  April 9, 2024

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2024, Defendant's Pretrial Memorandum was filed electronically and is available for viewing and downloading from the ECF system of the United States District Court for the Eastern District of Pennsylvania on all counsel of record.

*/s/ Caren Litvin, Esq.*
Caren Litvin, Esq.
(Pa. Atty I.D. No. 41796)
150 N. Radnor Chester Road, Suite F-200
Radnor, PA  19087
CL@litvinlawoffice.com
(610) 977-2049 (office)
*Counsel for Defendants*

Dated:  April 9, 2024